**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**UNITED STATES OF AMERICA**,

v.

**JAI DEVON LEE**,

    Defendant.

Case No. 7:15-CR-6 (HL)

## ORDER

This matter came before the Court on October 22, 2015 for a hearing on Defendant's pending motions to suppress. (Docs. 38, 39). This Order memorializes the Court's oral rulings.

### I.  BACKGROUND

Following receipt of a tip from a confidential informant (CI) that Defendant Jai Devon Lee was attempting to sell a collection of personally identifiable information (PII), law enforcement launched an investigation. The CI, who allegedly has known Defendant for many years, agreed to assist law enforcement officials throughout the course of an approximately six day investigation. The CI participated in two monitored telephone conversations between himself and Defendant during which the CI confirmed that Defendant wished to sell the PII's for $50.00 per PII and arranged a scheduled transaction with a purported buyer.

On June 25, 2014, the CI picked up Defendant in Statesboro, Georgia and drove with Defendant back to Valdosta. The CI and Defendant arrived at El Cazador Restaurant at approximately 4:20 p.m., where they met Detective Robert Davis from the Lowndes County Sheriff's Department, who was posing as a tax preparer from Tallahassee interested in purchasing the PII's from Defendant. The three men sat down in a booth together. Defendant purchased a beer and then proceeded to produce a Nike shoebox from a black backpack. The box contained 988 pink slip original copies of auto loan applications from BIDIC Auto Lines in Bridgeton, New Jersey. Each loan application contained a name, date of birth, address, Social Security number, and telephone number. Defendant proposed a total sale price of $45,000.

After reviewing the documents, Detective Davis told Defendant that he needed to make a telephone call to "his guy" to arrange for delivery of the money. Upon exiting the booth, Detective Davis gave a thumbs-up signal to members of the cover team, a group of plain-clothed officers monitoring the transaction, and walked out of the restaurant. Another detective walked up to Defendant and explained that he was under arrest. Defendant stood and exited the restaurant escorted by law enforcement.

Defendant was transported to the Lowndes County Jail for processing and questioning. After completing the intake process, Defendant was permitted a telephone call. He contacted Marcia Saunders, his girlfriend. Officer Steven

Carter heard Defendant tell Ms. Saunders, "That was an undercover cop. You need to get rid of all the papers." Officer Carter terminated the call and notified Detective Davis about the content of the call. Special Agent Clint A. Bush with the United States Secret Service called Ms. Saunders on June 26, 2014. She returned his call on June 27th. Ms. Saunders assured SA Bush that she had destroyed no evidence. She further offered that she believed that when Defendant instructed her to destroy the papers, he was referring to their laptop computer. Later that same day, Ms. Saunders delivered the computer to law enforcement. SA Bush subsequently sought and obtained a warrant to search the contents of the computer.

An indictment was filed on March 11, 2015, charging Defendant with one count of Identity Theft in violation of 18 U.S.C. § 1028(a)(7). The Government obtained a superseding indictment on September 9, 2015, adding one count of Fraud in Connection with Access Devices in violation of 18 U.S.C. § 1029(a)(3) and one count of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A.

## II.   DISCUSSION

In his first Motion to Suppress (Doc. 38), Defendant moves the Court to exclude any information derived from the search of Defendant's laptop computer. According to Defendant, the search warrant application did not support a finding of probable cause that the computer contained evidence of criminal activity. Defendant argues that the investigation leading up to Defendant's arrest was

3

based solely on the suspicion that Defendant possessed paper documents containing CII's. Neither the CI nor Defendant ever mentioned a computer, nor was there a computer present upon Defendant's arrest. Further, Defendant suggests that any reliance on Ms. Saunders' statement that Defendant was referencing the laptop when he told her to "get rid of all the papers" is tantamount to information supplied by a tipster or informant. In the absence of some corroborating evidence produced by the Government to establish the relationship between Defendant and Ms. Saunders, she is essentially anonymous, and her statement alone is not enough to establish a fair probability that the computer contained evidence of criminal activity and to justify issuance of the warrant. The Court finds Defendant's arguments unconvincing.

"The Fourth Amendment requires that a search warrant be issued only when there is probable cause to believe that an offense has been committed and that evidence exists at the place for which the warrant is requested." United States v. Betancourt, 734 F.2d 750, 754 (11th Cir. 1984) (citing Zurcher v. Stanford Daily, 436 U.S. 547, 558 (1978)). Probable cause entails probabilities which are "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Illinois v. Gates, 462 U.S. 213, 241 (1983) (internal quotation omitted). When reviewing the validity of a search warrant, courts "should not interpret supporting affidavits in a hypertechnical manner." United States v. Miller, 24 F.3d 1357, 1361 (11th Cir.

1994). Rather, "a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." Id.

In the Court's estimation, review of the search warrant is unnecessary in this case. Defendant inserted Ms. Saunders into the ongoing investigation when he decided to telephone her from the jail with instructions to destroy evidence. Ms. Saunders then volunteered that she believed Defendant was referencing a laptop computer she and Defendant jointly owned. Ms. Saunders, who was in possession of the computer, surrendered the device to law enforcement. There is no evidence that she was under any duress or that she was coerced into relinquishing the computer. She, thus, impliedly consented to a search of the computer. The subsequent search warrant application was nothing more than a surety. Defendant's motion to suppress the fruits of the search warrant is accordingly denied.

Defendant next argues that any custodial statements he made following his arrest should be suppressed because his statements were not the product of a knowing, intelligent, and voluntary waiver of his Fifth and Sixth Amendment rights. (Doc. 39). Warnings provided pursuant to Miranda are required prior to the admission of any statement elicited from a person in the course of a custodial interrogation. Endress v. Dugger, 880 F.2d 1244, 1248 (11th Cir. 1989). "[N]o

5

talismanic incantation" is required to meet the Miranda requirements; rather, all that is required is that the warning be "effective." California v. Prysock, 453 U.S. 355, 359 (1981). However, the warning can only be waived if the waiver is voluntary, knowing and intelligent:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

United States v. Barbour, 70 F.3d 580, 585 (11th Cir. 1995) (internal quotation omitted). "[T]he burden of proving the validity of a waiver of constitutional rights is always on the government." Moran v. Burbine, 475 U.S. 412, 450 (1986) (citing Brewer v. Williams, 430 U.S. 387, 404) (1977)).

The testimonial and video evidence evinced in the course of the hearing demonstrates that Defendant knowingly and voluntarily waived his Fifth and Sixth Amendment rights prior to providing any statements to law enforcement. After being informed that he was under arrest, Defendant willingly left the restaurant where he was meeting with the CI and the undercover officer and traveled to the sheriff's department without consequence. There is no evidence that any agent attempted to question Defendant prior to his arrival at the jail. Once in an

interrogation room, it is clear that SA Bush carefully reviewed the Miranda waiver with Defendant part by part and obtained Defendant's signature. While Defendant attempts to suggest that he potentially was under the influence of alcohol, having consumed some portion of a bottle of beer immediately prior to his arrest, and raises the possibility of a mental health impediment, it is apparent to the Court from the video evidence that Defendant was physically and mentally capable of waiving his rights and was in no way coerced into signing the waiver. Defendant's motion is denied.

### III.  CONCLUSION

For the foregoing reasons, Defendant's motions to suppress (Docs. 38, 39) are denied.

**SO ORDERED**, this 23rd day of October, 2015.

*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**

aks